UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| AARON PATTERSON, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>METROPOLITAN LIFE )<br>INSURANCE COMPANY, )<br>)<br>Defendant. ) | Civil Action Number<br>**3:16-cv-01189-AKK** |

## MEMORANDUM OPINION

Shortly before his mother died, Aaron Patterson called Metropolitan Life Insurance Company to request another copy of his mother's life insurance policy. MetLife sent an "Acknowledgment of Insurance," which incorrectly stated the face value of the policy as $250,000, when the correct value was $25,000. In light of Patterson's belief that MetLife is bound by its mistake and should pay $250,000 instead of the actual face value, Patterson filed this lawsuit, alleging breach of contract and bad faith.[1] Doc. 1. The parties filed motions for summary judgment, which are fully briefed and ripe for consideration. Docs. 20; 21; 22; 23; 24; 26; 27; 28; 29. After reading the briefs, viewing the evidence, and considering the relevant law, the court grants summary judgment for MetLife.

---

[1] Patterson also alleged a misrepresentation claim, but agreed to dismiss this claim. Doc. 26 at 3 n.2.

## I. LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (internal quotations omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

At summary judgment, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255. Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version

of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252)). The standards governing cross-motions for summary judgment are the same, although the court must construe the motions independently, viewing the evidence presented by each moving party in the light most favorable to the non-movant. *See U.S. v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984).

## II. FACTUAL BACKGROUND

Gail Patterson purchased a life insurance policy from MetLife with a face value of $25,000, naming her son Aaron Patterson as the lone beneficiary. Doc. 21-1 at 6-35. The policy states that "[t]his policy includes any riders and, with the application attached when the policy is issued, makes up the entire contract. . . . No statement will be used to contest the policy unless it appears in the application." Doc. 21-1 at 18. After obtaining the policy, Gail Patterson consistently paid the monthly premiums until her death in September 2015. Doc. 21-1 at 37-41.

3

Sometime before her death, her health gradually deteriorated, and Aaron Patterson began handling her affairs. Doc. 24-1 at 9.

Aaron Patterson knew that his mother had a life insurance policy with MetLife, but had never seen the policy and did not know the face amount of the coverage. Doc. 26 at 4-5. On March 9, 2015, around the time his mother entered a nursing home, he called MetLife to request a copy of the policy. Docs. 21-2 at 2; 21-4 at 9. One of MetLife's customer service representatives, Lane Wiley, told Patterson that "what we normally do is send out an Acknowledgement of Insurance ("AOI"), which is a legal document providing the policy information. For an exact duplicate of the entire policy, there is a 25 dollar fee." Doc. 21-2 at 2. Patterson declined to pay the fee to receive the exact duplicate, so that same day MetLife mailed to Gail Patterson the one-page AOI, which incorrectly listed the face amount of the policy as $250,000. Docs. 21-2 at 2-3; 21-1 at 43.

The cover letter accompanying the AOI reads: "We are enclosing the Acknowledgment of Insurance you requested. The acknowledgment serves the same legal purpose as the original life insurance policy." Doc. 24-26 at 8. The AOI states that "[t]he original Policy, together with the application upon which it was based, is the entire contract between the Company and the Owner" and that the AOI is only "a brief description of the Policy." Doc. 21-1 at 43. The AOI also explains that "[a]ny additional benefits contained in the Policy are not described

4

here" and that "[f]urther details about the policy and benefits will be furnished upon request." Doc. 21-1 at 43.

After his mother's death, Patterson called MetLife to file a claim. Docs. 1-1 at 3; 21-4 at 2-3. When the MetLife representative indicated that the estimated benefit was approximately $30,000—i.e. the $25,000 face value plus the yearly dividends, as authorized by the policy, doc. 21-4 at 3—Patterson responded, "[t]hat's what I was wondering because on this piece of paper that we received March 9th, 2015 . . . has the face amount of insurance [as] $250,000." Doc. 21-4 at 3. The MetLife representative explained that this figure was a mistake and that "[the representative] just added another zero. . . . Or the decimal is missing or out of place. . . . $25,000 is the face amount." Docs. 21-1 at 14; 21-4 at 3. Patterson said "Okay," and the call concluded shortly thereafter. Doc. 21-4 at 3.

MetLife subsequently sent Patterson a letter approving his claim and a check for $30,030.66. Doc. 21-1 at 53. The letter noted that the AOI had "incorrectly listed the policy face amount" and that the correct amount was $25,000. Doc. 21-1 at 51-53. MetLife included with the letter the annual policy statements for the previous five years it had sent to Gail Patterson, which all showed the face value as $25,000. Docs. 21-1 at 45, 53. Patterson subsequently filed this lawsuit seeking to recover the full amount referenced in the AOI. Doc. 1.

## III. ANALYSIS

There are no material facts dispute in this case. Therefore, the court must decide which party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Because this matter is before the court based on diversity jurisdiction, the court applies Alabama's substantive law to each claim. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

### A. Breach of Contract

An insurance policy is a contract. Ala. Code § 27-14-1. Because a breach of contract claim is contingent on the existence of a valid contract, *see Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002), the question for the court is whether Patterson and MetLife agreed, through the AOI, to modify the policy to increase the face value to $250,000. The court answers the question in the negative.

"The elements of a valid contract include: an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." *Ex parte Jackson Cty. Bd. of Educ.*, 4 So. 3d 1099, 1103 (Ala. 2008) (internal quotations omitted). To determine whether a contract exists, courts must look "to the reasonable meaning of the parties' external and objective manifestations of mutual assent." *Mayo v. Andress*, 373 So. 2d 620, 623–24 (Ala. 1979). MetLife argues that the AOI was not an offer to change the face value of the policy to

6

$250,000, and that even if it were, there was no acceptance of such an offer. Doc. 20 at 12. In contrast, Patterson avoids the question of contract formation and modification. Instead, Patterson argues that the AOI is a "legally enforceable part of the [Policy]" because the accompanying cover letter stated that the AOI "serves the same legal purpose as the original life insurance policy," doc. 24-26 at 8, and MetLife is therefore bound under the "unilateral mistake" doctrine. Docs. 23; 27.

Patterson is generally correct that courts in Alabama will not reform contracts where a mistake in the contract is unilateral. *See* Tilley's Alabama Equity § 9:4 (5th ed.). However, reformation is not at issue here because the prerequisite to reformation is the existence of an actual contract. *See id.* Indeed, it's a doctrine used to prevent a party from using a unilateral mistake to change the terms of the actual contract. For example, in a case involving a clerical error which caused an insurance policy to mistakenly include coverage for loss of business income that the insurer contended it never intended to offer to the insured, even though the insurer had not adjusted the premiums to trigger the coverage, the Alabama Supreme Court held that the insurer was bound by its unilateral mistake. *Am. & Foreign Ins. Co. v. Tee Jays Mfg. Co.*, 699 So. 2d 1226, 1228-29 (Ala. 1997). Critically, however, in that case the policy contemplated that the parties may amend the policy to provide for loss of business income coverage. *Id.* To do so, the policy required the insured to report business income and allowed the

insurer to adjust premiums based on the reports. *Id.* Consistent with the policy, the insured reported its business income, but the insurer never adjusted the premiums. *Id.* The insurer argued that its failure to require the additional premiums precluded coverage for business income. *Id.* at 1228. The Alabama Supreme Court disagreed, holding that, because "the policy, on its face, clearly provides business loss coverage . . . allowed for an adjustment of the premium at the end of the policy period," and the insured complied with the policy and stood ready and willing to pay any additional premiums, the insurer was bound by the clear terms of the policy. *Id.*

In contrast, here, no one acted contrary to or consistent with the original policy to warrant the application of the unilateral mistake doctrine. Gail Patterson did not do anything that warranted a change of her coverage under the terms of the policy. Likewise, MetLife did not commit an error in applying the original contract that warrants a finding that it must grant Gail Patterson a ten-fold increase in coverage that was not spelled out in the original policy. To the contrary, the clear, unambiguous terms of the policy set a face value of $25,000 and set the premiums based on this value. Doc. 21-1 at 6-35. Therefore, the unilateral mistake doctrine is unavailing here, and Patterson can only prevail if the AOI is a new contract or a modification of the original contract.

As proof that the AOI constituted an offer for a new contract, Patterson argues that the mere issuance of the AOI effectively "replaced" the policy his mother acquired. Doc. 26 at 10-11. In support, Patterson relies primarily on MetLife's then-existing call center instructions, doc. 26 at 10-11, which directed employees that "[i]f a caller indicates the original policy has been lost or destroyed, advise an Acknowledgement of Insurance will be sent to the owner to replace the original policy." Doc. 24-15 at 2. The instructions added that:

> Once issued, the [AOI] is considered the "original" policy. An [AOI] does not contain the full policy provisions; however, it is a legally binding document. Even if the original policy is found, the [AOI] is considered to be the contract of record. As such, it must be remitted if the policy is required for the completion of a transaction.

Doc. 24-15 at 2.

There are a few problems with Patterson's contentions. First, the instructions do not say that the AOI can change the terms of coverage by increasing it without any corresponding increase in the premiums or agreement by the insured. Second, the reliance on the internal instructions overlooks that amending an existing contract requires an offer, acceptance, consideration, and mutual assent to the new terms, *Ex parte Jackson Cty. Bd. of Educ.*, 4 So. 3d at 1103, and that an offer "must be communicated before it may be accepted." *Hoffman-La Roche, Inc. v. Campbell*, 512 So. 2d 725, 734 (Ala. 1987). Relevant here, MetLife's call center instructions are internal policies directed at its

employees, and Patterson has offered no evidence that MetLife disclosed the instructions to him before he filed this lawsuit. Therefore, the instructions cannot constitute evidence of an offer from MetLife to change Gail Patterson's policy. *Id.*

Third, while Patterson is correct that the cover letter accompanying the AOI states that the AOI "serves the same legal purpose as the original life insurance policy," doc. 24-26 at 8; 26 at 11, Patterson overlooks the reference to the "original" policy in the quoted language. Indeed, the customer service representative Patterson spoke to told him simply that MetLife would send him a copy of his mother's policy, and did not state that MetLife was sending him a revised policy with additional coverage. Doc. 21-2 at 2. In fact, the AOI states unequivocally that "[t]he original Policy, together with the application upon which it was based, is the entire contract between the Company and the Owner" and that the AOI is only "a brief description of the Policy." Doc. 24-26 at 9. These statements refute Patterson's contention that the AOI replaced the original policy and amended the coverage amount. *See Alabama Elec. Co-op., Inc. v. Bailey's Const. Co.*, 950 So. 2d 280, 285 (Ala. 2006) (quoting 17 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 242:33 (3d ed. 1997), which explains that "[a] certificate of insurance is not part of the policy—if it states that there is coverage but the policy does not, the policy controls."); *Catlin Syndicate Ltd. v. Ramuji,*

*LLC*, No. 4:16-CV-1331-VEH, 2017 WL 3581722, at *11 (N.D. Ala. Aug. 18, 2017) (same).

Finally, Patterson's focus on the AOI also ignores that MetLife sent Patterson's mother, the policy holder, annual policy statements with the face value listed as $25,000. Docs. 21-1 at 45, 53; 24-7 at 2. MetLife sent the last such statement *after* it issued the AOI that forms the basis for Patterson's contentions in this case,[2] which is further proof that MetLife did not intend for the AOI to change the value of the coverage.

But even if Patterson is correct that MetLife intended for the AOI to constitute an offer for a new policy, his breach of contract claim still fails because there was no acceptance. MetLife mailed the AOI to Patterson's mother, doc. 24-26 at 8, and there is no evidence that Patterson responded to the AOI until after his mother died. In fact, Patterson conceded after his mother's death that he did not know the face value of the policy and responded "Okay" when MetLife's customer service representative explained that the face value listed on the AOI was a typo. Doc. 21-4 at 3. More significantly, however, Patterson had no authority to accept an offer to alter the policy because Alabama law is clear that only the policy holder can do so: "[n]o alteration of any written application for any life or disability insurance policy shall be made by any person other than the applicant without his

---

[2] MetLife sent the final annual policy statement on September 26, 2015, doc. 21-1 at 45, four days after Gail Patterson passed away, doc. 1-1 at 3, but apparently before it received notice.

11

written consent." Ala. Code § 27-14-6. And as MetLife points out, there are questions as to whether Patterson's mother even had the capacity to assent to such a change, given her mental state at the time. Doc. 20 at 15. Consequently, because Patterson has not presented any evidence that he had his mother's written consent to accept any changes to the policy, and because he failed to manifest any intent to accept the offer on his mother's behalf, there was no acceptance of the purported offer. *See Ex parte Jackson Cty. Bd. of Educ.*, 4 So. 3d at 1103.

Furthermore, Patterson's claim also fails because of the absence of consideration for the tenfold increase in the face value of the policy. *Id.* "Adequate consideration exists, or is implied, if it arises from any act . . . which creates and carries a benefit to the party promising, or causes trouble, injury, inconvenience, prejudice, or detriment to the other party." *Files v. Schaible*, 445 So. 2d 257, 260 (Ala. 1984). It strains credulity to argue that an insurer would offer an additional $225,000 in life insurance coverage for a 71 year old without requiring any corresponding premium increases. *See id.*

Viewing the evidence in the light most favorable to Patterson, no reasonable person would believe that the AOI was an offer to change the policy to provide ten times the originally agreed upon amount of coverage. Moreover, because there was no consideration or acceptance, there is no evidence to support a finding that a contract existed between MetLife and Patterson to change the face value of the

policy to $250,000. Patterson's breach of contract claim is thus due to be denied. *See Ex parte Jackson Cty. Bd. of Educ.*, 4 So. 3d at 1103.

### B. Bad Faith

Bad faith is a tort that arises where an insurer refuses to pay an insurance claim. A "normal" bad faith claim requires proof of: 1) an insurance contract and a breach thereof by the defendant; 2) an intentional refusal to pay the insured's claim; 3) the absence of any reasonably legitimate or arguable reason for that refusal; and 4) the insurer's actual knowledge of the absence of any legitimate or arguable reason. *Alfa Mut. Fire Ins. Co. v. Thomas*, 738 So. 2d 815, 822 (Ala. 1999). In light of the court's finding that no contract existed between MetLife and Patterson to increase the face value amount of the policy to $250,000, *see* Part III.A, *supra*, Patterson cannot establish bad faith through the "normal" method of proof. *See id.*

Patterson's "abnormal" bad faith claim, which is based on MetLife's alleged intentional or reckless failure to investigate his claim, *see* doc. 1-1 at 4, also fails. To prevail on such a claim, the plaintiff must prove the "absence of [a] legitimate reason for denial . . . at the time of the denial." *See State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 258 (Ala. 2013). And where an "investigation establishe[s] a legitimate or arguable reason for refusing to pay," a bad faith claim must fail. *Weaver v. Allstate Ins. Co.*, 574 So. 2d 771, 774 (Ala. 1990).

The record here is clear that MetLife investigated Patterson's claim. In its letter approving his claim, MetLife noted that the AOI had "incorrectly listed the policy face amount" and included the past five annual policy statements that listed the face amount as $25,000. Doc. 21-1 at 53. Then, in response to Patterson's demands that it pay an additional $220,000, MetLife's legal department responded that the mistake was "a scriveners error." Doc. 21-1 at 57. Put simply, even viewing the evidence in the light most favorable to Patterson, MetLife had a "legitimate reason for den[ying]" Patterson's claim for the additional $220,000. *See Brechbill*, 144 So. 3d at 258. Accordingly, Patterson's "abnormal" bad faith claim based on a purposeful failure to investigate also fails.

## CONCLUSION

Consistent with this opinion, MetLife's Motion for Summary Judgment, doc. 20, is due to be granted, and Patterson's Motion for Summary Judgment, doc. 22, is due to be denied. A separate order will be entered.

**DONE** the 20th day of December, 2017.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE